Mr. Miller, whenever you're ready May it please the court? Officer Wyman and Walsh responded to a volatile situation and while trying to safely effectuate the arrest of a citizen were belligerently confronted by Joshua Benny. Mr. Benny disregarded 19 directives to back away to clear the area so that the officers could effectuate the arrest of another individual and also have the scene be safe. Mr. Benny also ignored the pleadings of others. Am I right that the issue of probable cause to arrest is not in the case? That is correct. So we're just talking about the force that was used and the degree of force that was used, right? That is correct. So the fact that he disregarded instructions that that could be construed as disorderly conduct or interference with government administration and could allow him to be arrested, we're not worried about that because you want one, aren't you? We're not worried about it in terms of that cause of action but it does give context to the actions of the police officers and in this case actually in the McKinney case that this court decided in 2022. But you know what it seems to me it's a very simple case and then tell me if I'm wrong about what I'm about to say. We've got two different accounts of what happened from the two leading participants, the officers and Mr. Benny. The issue is he was told to turn around and let himself be handcuffed essentially and the question is was he then immediately thrown on the ground before he had a chance to even respond to that or did he do something that indicated that some degree of physical force was going to be necessary, a considerable degree of physical force was going to be necessary to get him handcuffed. What I've just described would be a classic case where there's no summary judgment. What's different here is there's a video and you're arguing that the video turns this from a disputed he said he said to something that is clear. Is that not what this case is about is whether the video is sufficiently clear to turn that conflict in testimony which goes directly to whether throwing the guy on the ground rather violently, that much is clear from the video, was reasonable or not? I would respectfully have one caveat to that. Even if we didn't have the videotape and even assuming that Mr. Benny did not have a sufficient time to comply, a split second, there would still be an entitlement to qualified immunity. Because when you say to somebody, okay, you're under arrest, turn around, you don't have to wait for him to turn around, you can just throw him on the ground on the contrary. No, and I think the cases that we cited in our brief and particularly the Katz case is that if you have someone who is repeatedly disregarding your directives and repeatedly confronting you and confronting you, you don't have to wait for that suspect to turn around. To hit you and in this case, this court in the McKinney case. Did he ever do anything? Is there any testimony that did anything that is like about to hit the officer? He kept on going back into the officer's faces. 19 times he's asked to back away. You even see other civilians try to move him away. He's issued final warnings. The police officers actually hold the cuffs in front of him. So we can disregard. The video makes no difference in this case. No, the video shows what happens and shows that the story in the complaint is a fiction, right? The video does not. Most of the video doesn't even show Mr. Benny at all there. You can see him advancing. You see him advancing and you see him going back. He advances. He goes back. That is going that you see. And you see the actual throw down. You see from the side he gets thrown down. You don't see what he did or didn't do. You don't see what he did or didn't do. What you see is him dumbed down. He moment as the district court described it to his knees momentarily touched the ground. He gets back up. Then he physically engages with the police officers. And if you look at the Lieberman case, he's already been thrown down. That's what we're talking about. But he's been thrown. He's been thrown down for a second and pops back up. Now, if you look at the Lieberman case decided by this court, the person was picked up and body slammed. And this court said there's an entitlement to qualified immunity. So the question and their burden was they have to cite cases from the Supreme Court and then perhaps arguably the Second Circuit where under that situation, where someone is repeatedly disregarding orders from the police, repeatedly engaging the police, getting up in their face. Is it clearly established? Would every reasonable police officer out there know that it would be a constitutional violation to grab him and spin him to the ground? There's not one case they cite that says that. Not one case. And the United States Supreme Court in twin decisions could not have been more clear. The video comes into play because you see what happens in the video. The only thing you don't see is a two second snippet of when Wyman goes behind him to bring him to the ground. And I would submit to you that two seconds is immaterial to whether the officers are entitled to qualified immunity. Because even if we are assumed, even if we were to assume that when he walks behind Benny, Benny doesn't have any time to comply. And even if we were to assume that under that situation where you're making a split second judgment that the officer could not bring him to the ground. The Lieberman case says that they can. There's no case from the Second Circuit or the Supreme Court that says they can't. And if the officer made an error in judgment that he if he was wrong and if he would have if he was wrong that Benny would have at that moment all of the sudden. Despite everything that transpired before was going to be this peaceful. The second the Supreme Court says he's entitled these officers are entitled to make that error in judgment. That's the whole purpose behind qualified immunity. Otherwise were the rules of conduct. So you are accepting for purposes of this motion. Yes. That Mr. Benny was in the process of complying or at least had no opportunity to comply. No opportunity to put his hands behind his back for the purposes of this motion, correct. So that means that the officer, your argument is that there is clearly such Initiate the use of force, even excessive force. If what if you are facing a volatile situation with someone who has repeatedly defied directives to back away. Yes. And that that the case laws we cited a lot of case law where those situations happened. More importantly, it's their burden to show case law that is squarely on point that would have shown that takedown was a violation of the Constitution. And again, in the Supreme Court cases that both came down 2021, they left open whether even the circuit court case could could establish that. But given the Lieberman case where you had a body slam on similar facts. How could the law have been clearly established that he couldn't have just twisted them to the ground? Thank you. I just I reserve some time. Thank you, counsel. You've reserved a few minutes. Good morning, Scott Kornbaum from Mr. Benny. I thought I heard an unusual argument come from Mr. Miller, which was that the video is irrelevant. But if one reviews their brief, it's video shows this. The video shows that video shows this. This is not Scott V. Harris. And as Judge Matsumoto indicated, you can see this at 281 in the record. Despite all of the video evidence and the party submissions, it remains unclear whether Mr. Benny had any time to comply with the arresting arresting officer's order to turn around after he was told he was under arrest. What Mr. Benny did in response and what degree of force the officer used. These facts concerning the use of force are material and disputed. That should be the beginning and the end of this case. And there are there's good reason. I want to address. Mr. Miller's interpretation of qualified immunity in this case law. Yes, one cannot define the law too generally. The Supreme Court has made this clear, but he's requiring too much specificity. First, this court's doctrine, this court's law on qualified immunity remains precedential and binding on this court. And we have identified the law. And Judge Lynch, it's not just the initial use of force, although that is excessive for a jury can find it's excessive force. But it also once he is down, you see one of the officers knee, they say the facial area, the chin, it's it's on the neck and in the jaw, 20 seconds. How much force is being used there? A jury can also find is excessive. And that's what Judge Matsumoto found. And so whether one wants to find that this court's lacking subject. You say seem to fall into categories of where an officer initiated the use of force or where the individual had already been subdued or detained and the officer continued to use force. Sure. Do you have, can you point us to a case involving the situation where the officer initiates use of force, but in the context of a volatile situation? Because I think that's what your friend is saying, that this is different because of what came before it. That you don't just look at the two seconds between the last warning and the throw down, but the minute leading up to that. Well, I think this court's decision in Jones v. Trubick is helpful. I don't have the site handy, but we cited in our brief. There, the jury found that the officer's initial use of force during a struggle was reasonable. And then there was a second tasing and there was a disputed fact as to whether whether the plaintiff, Mr. Jones, was resisting. I think that case is on all fours. Mr. Miller points to this court's decision in McKinney. I believe it's McKinney or McKinsey. We think that's wrongly decided, but that's this court's law. But if you rely on Jones, I think that's clearly established law with respect to what happened here. And as the court, you know, after he's thrown down, he does resist. He pops up sort of, yes, you know, he's thrown down and pops up, but then he's down again. There is a time, as Judge Matsumoto found, where the jury can find, because the video is ambiguous. Again, this is and I don't even think Mr. Miller is contesting that right now. This is not Scott v. Harris, although they contended in their brief it was. I thought that's what I thought their argument was, is this is not the usual. There are disputed facts, so there is no appellate jurisdiction. This is one where the facts are clear from the videotape, and that seems to me to have been abandoned. Maybe I misread that. No, I start. That's no longer there. I started my argument with the exact same surprise. But now we're talking about a couple of different things because I read Judge Matsumoto as saying that it is the initiation of the physical force, particularly of a rather strong use of physical force. That's the way it looks on the video to me. That that's what the problem is, that we don't know what provoked that use of force, if anything. The man was told he was under arrest, and then the way the arrest was executed was by throwing him on the ground. Sure. And I thought that was the thing. I didn't think she was relying on what happens after he's subdued. Am I wrong about that? I believe so, Judge. I believe that just with respect to the concluding quote I read from her opinion, again, that's at 281 of the joint appendix. 201? 281. 281. I believe Judge Matsumoto was referring to the throw down as well as the knee on the neck. I won't say it's the neck, but if you see on the video, it's here. That as well. Think of it, it makes sense. Let's assume the officer was, and you can't tell from the video, but really trying to hurt Mr. Bent as compared to trying to just subdue him for handcuffing purposes. I know subjective intent is irrelevant, but if that is what a jury can find, that, too, is excessive force. So I don't think Judge Matsumoto was just limiting her conclusion about disputed issues of material fact to just the initial throw down. I mean, you know, I'm looking at 281, and what the district court says is despite all the video evidence and submissions, it remains unclear whether Mr. Benny had any time to comply with the arresting officer's order to turn around after he was told he was under arrest. What Mr. Benny did in response, and what degree of force the officer used, the facts around the moment of the officer's use of force are material and disputed. But that is the conclusion. That's the conclusion to a lead up of other descriptions of fact regarding the use of force, including on the cheek. Now, of course, Judge Lynch said if you agree with Judge Matsumoto that the throw down is the beginning and the end, then okay, we agree, that's fine with us as well, because the continuation of the use of force, whether you want to call it part one, part two, or part three as the appellant's claim, matters not. But I think there's also the independent use of force with regard to while the handcuffing is current. It's contextual, isn't it? I mean the problem is, you know, when you – I realize that we've said the courts generally look at – you have to look at each act and each escalation as a sort of separate thing. But whatever is done may crucially depend on how this thing started, that if there is an aggressive use of force when very possibly no force was necessary to effect the arrest. Because we don't know what Mr. Benny was doing when the decision was made to throw him to the ground. That all colors how much force you then use at the next stage. Correct. Because if you weren't supposed to be doing anything and he sort of hits the ground, bounces up, gets bounced back down, you could characterize that as his resisting. And so the second act looks a little different. But if you weren't – if you were sort of throwing him down unlawfully in the first place, that changes the whole complexion. And this court's decision in Jocks v. Tavernier in the false arrest malicious prosecution context makes that point, saying that, you know, an officer knows what's going on, right? And the officer knows that why the arrestee is doing what he or she is doing, you can't then just claim, oh, let's just ignore that fact. So that is an analysis. It's not identical to our situation here. I'm still struggling a little bit with – at the moment of the arrest or the officer saying you're under arrest last morning and then you're under arrest with your hands up, that's not starting from zero. Sure. I think Jones actually says that officers have to be given some allowance to account for a volatile situation. And here your friend is saying there's 19 separate – I didn't count them – but acts of not complying with officer's orders. How do we account for that in the use of force? I think it would be one thing if everything was calm and then there was this bear hug and throwdown. But how do we account for the context? Well, in one response, the 20th time is a charm. But all kidding aside, what a jury can find, yes, that is relevant. I can't deny that. But let's assume he – all kidding aside, he turns – he starts to turn around and comply. That that is – That is for the jury to consider whether in fact – I think they would use the word resistance, but resistance or whatever term the court desires, whether that was a real threat. I mean, the question is whether it was reasonable for the officer to think that on the 20th ask that there was going to be compliance. Sure. And I think that's an issue of fact that Judge Matsumoto determined is for the jury to decide. And I'm not – Well, he was ordered to turn around. It's not like it was, all right, you had your last warning. Wham. He was given another – Right. And he starts to – But Mr. Benny, Mr. Benny in his declaration says, I started to turn around and then – and I believe, and I could be wrong about this because I just – I'm not even sure that the officer that actually threw him to the ground was in uniform. I just don't remember. I apologize for that. I want to, if I may, make a different point. Not a different – I just want to switch topics, if I may. In the event you decide to reverse and find qualified immunity, which I don't think for the reasons we've articulated and are discussing, I want to talk about the state court claim, the state law claim of battery, which they claim that it wasn't in the complaint, it wasn't there. As this court knows from Shamir and the Supreme Court's decision in Johnson v. City of Shelby, 574 U.S. 10, it's a very low hurdle. Yes, there was no separated out claim for relief called – you know, eighth claim for relief, New York State law, assault and battery. But paragraph one of the complaint, Joint Appendix 22, this is a claim for assault and battery under New York State law. But defendants are – paragraph six, Joint Appendix 24, defendants are liable for the assault and battery and excessive force. They draw a distinction between unreasonable use of force and battery. It's in that complaint. So if the court believes that qualified immunity is warranted, there is still a state law battery claim because as this court recently held in Triolo v. Nassau County, qualified immunity does not bar a state law claim against the municipality. And so, as I said, while I don't think the court should, I think the court should affirm on qualified immunity and excessive force. If it disagrees, state law battery claim should be remanded to the district court to decide whether Judge Matsumoto wants to exercise supplemental jurisdiction. If there are no other questions, I rest. Thank you very much. Thank you. I just wanted to clarify. The videotape is highly relevant. The issue, though, that we're talking about is one brief moment in time in a series of events when Officer Benny is turned around to effectuate the arrest. And the Supreme Court and this court have said over and over and over again, we don't judge how police officers respond with the benefit of 20-20 hindsights while we're sitting in a courtroom. They were faced with an extraordinary situation trying to secure a crime scene. Mr. Benny was belligerent up in their face over and over and over again. It's not for the court to then step in and say, in that one moment in time, in this volatile situation, you should have stopped and you should have known that he was going to comply. The rules are to the contrary. You're allowed to assume that he's not going to comply. That is why we have qualified immunity. Otherwise, who's going to want to be a police officer? And if we look at what's going on any time we watch TV now, you look how quickly a protest goes from being calm to officers being attacked. It happens in the blink of an eye. And if we're going to hold them personally liable every time they make a mistake, assuming this was a mistake, we're not going to have anyone want to be police officers. And this court expressed that concern in the Eng case. And I think the argument is it doesn't matter what happened in the second or two between the last warning and the throwdown. And even if he was going to comply, if Benny was going to comply, the use of force was reasonable in light of the circumstances. And the officer was allowed to make a mistaken judgment in light of those circumstances. Otherwise, the rule would be he would have had to have waited for Benny to hit him before bringing him to the ground. That's not the law. And the Supreme Court emphasized that in the strongest possible terms. Thank you. Thank you both. We'll take the case under advisement.